BUTLER v. GULF PIPE LINE CO.†

(Court of Civil Appeals of Texas. Galveston. Jan. 12, 1912. Rehearing Denied Feb. 1, 1912.)

1. MASTER AND SERVANT (§ 97*)—INJURIES TO SERVANT—PROXIMATE CAUSE.

One operating an oil pipe line and also a telephone line on poles immediately over and following the direction of the pipe line was not required to anticipate that his employés, working about the pipe line in making repairs, would be injured by the ignition of oil by lightning striking the telephone wire and passing to the ground through arresters on the poles.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 163; Dec. Dig. § 97.*]

2. NEGLIGENCE (§ 59*)—"PROXIMATE CAUSE."

Negligence, to be the "proximate cause" of an injury, must be the natural and probable consequence of the negligent or wrongful act,

which ought to have been foreseen by a reasonably prudent man in the light of the attending circumstances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 72; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 6, pp. 5758–5769; vol. 8, p. 7771.]

3. MASTER AND SERVANT (§ 190*) — NEGLIGENCE OF FELLOW SERVANT—ACTS OF FOREMAN.

The act of a foreman of a gang of workmen engaged in repairing a pipe line in throwing a match with which he had lighted a cigarette into a pool of oil, whereby an explosion and fire ensued, causing injury to plaintiff, one of the workmen, was not in furtherance of the duties of the foreman to the employer; and hence the latter was not liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

4. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—PROPOSITIONS.

An assignment of error, not accompanied by an appropriate proposition, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

5. MASTER AND SERVANT (§ 150*)—INJURIES TO SERVANT—WARNING SERVANT.

A corporation operating a pipe line and a telephone line above it and following its course was under no duty to warn employés engaged in making repairs on the pipe line that lightning might strike the telephone wires, pass down arresters on the telephone pole, and ignite oil standing in pools on the ground.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 150.*]

6. MASTER AND SERVANT (§ 258*)—INJURIES TO SERVANT—INCOMPETENCY OF SERVANT—PLEADING.

In an action for injuries to a servant, resulting from the act of defendant's foreman in throwing a match with which he had lighted a cigarette into a pool of oil, causing an explosion and fire, an allegation of the petition, that defendant was negligent in employing for foreman one who would strike a match and light a cigarette while standing in close proximity to a pool of oil in which men were working, was insufficient, in the absence of averment that the foreman was habitually careless to the knowledge of defendant, or that his carelessness was so notorious that defendant was chargeable with notice thereof, or that defendant knew that the foreman would strike a match under the circumstances stated in the petition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 835; Dec. Dig. § 258.*]

7. MASTER AND SERVANT (§ 170*)—INJURIES TO SERVANT—INCOMPETENT SERVANT.

A master is only required to use ordinary care in selecting his employés; and the fact that an employé is negligent on one occasion is not sufficient to show that the master had not used that degree of care required by law in the selection and employment of competent servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 336; Dec. Dig. § 170.*]

8. MASTER AND SERVANT (§ 150*)—INJURIES TO SERVANT — WARNING SERVANT — LAWS OF NATURE.

An employé engaged in repairing a pipe line is chargeable with notice of the law of nature that gas arising from crude petroleum rarifies the air and produces a point of light resistance, so that a bolt of lightning descend-

ing to the earth will follow the trail of the gas, and that, if he is working at the point of origin of such gas, a pool of oil in which he is standing may be ignited by the lightning; and hence the employer is not required to warn him of such danger.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 150.*]

Appeal from District Court, Tyler County; W. B. Powell, Judge.

Action by Joe Butler against the Gulf Pipe Line Company. From an order sustaining a demurrer to plaintiff's amended petition and dismissing the action, plaintiff appeals. Affirmed.

D. Edward Greer and F. C. Proctor, for appellant. V. A. Collins and Joe W. Thomas, for appellee.

McMEANS, J. Appellant, Joe Butler, plaintiff in the court below, filed this suit against the appellee, Gulf Pipe Line Company, to recover damages for personal injuries sustained by him while in appellee's employment.

A general demurrer urged by appellee to plaintiff's amended original petition was sustained by the court, and, the plaintiff declining to amend, his suit was by the court dismissed, and from the judgment of dismissal plaintiff has appealed.

Plaintiff, after alleging that the defendant was a corporation and a common carrier, and owned and operated a pipe line running through Tyler county, further alleged:

"That along beside said pipe line said defendant has constructed for its own convenience a telephone, built and attached to poles at convenient distances, and as a means of conducting an overcharge of electricity, as, for instance, a bolt of lightning, into the ground a wire from said telephone wire is extended down every third or fourth telephone pole into the ground, which enters the ground at a distance of only six or eight inches from said pipe line. That crude oil or petroleum is a very inflammable substance, as is also the gas generated therefrom, and the striking of a match or the flash of lightning near or in close proximity of a pool of such petroleum oil will ignite the gas arising therefrom and instantly ignite the entire pool of oil, which cannot be extinguished till consumed.

"The defendant's oil pipe, as is the case with all oil pipes, would often spring a leak, or at times clog up, and it would become necessary to unscrew or separate the joints to remove the obstruction, and, in either event, whether by leakage or uncoupling the pipe to remove obstacles within, oil in large quantities would run out of the pipes and collect in pools, and the defendant's employés who were engaged in repairs and improvements upon said pipe often had to stand and work in great pools of oil which had run out of

said pipe line and collected in the holes and ditches along same.

"That on the 21st day of July, 1908, and prior thereto, plaintiff was in the employ of defendant, together with several other men, engaged in making some repair on the said pipe line, and standing and working in a pool of oil while so engaged, and which was the usual and customary and necessary way in the business of the defendant, and which the defendant required of its men so engaged, and while so engaged and working the clouds overspread the skies, and it was thundering and lightning, when, all of a sudden, the lightning came down one of the conductors placed and installed negligently at and near one of the said pipe lines and pool of oil, known to the defendant, and flashed immediately to the gas arising from the oil and into the oil in which plaintiff was working, and instantly setting fire to the oil, * * *" burning plaintiff and inflicting the injuries for which he sues.

"That, if plaintiff is mistaken in how said lightning was conducted into said pool of oil, then he avers that lightning seeks the place of least resistance, and the gas arising from crude petroleum oil rarifies the air, and makes it produce a point of light resistance, and, if the lightning was not conducted down said wire into the pool of oil, then it came through the rarified air produced by the gas, and ignited the gas and oil, and this ignited plaintiff's clothing and his leg, and burned his lower limbs, as above alleged. But, if plaintiff is mistaken in his allegations that the gas and oil were ignited and caused to burn by the flash of lightning which was perceived just as the gas caught fire, then, in that event, plaintiff alleges that the defendant's foreman, Hardy Jenkins, who had full control and supervision over the plaintiff and other men doing the work that plaintiff was doing and of their work, and directing the same, he being vice principal of the defendant company, having been delegated full power and control as to said improvements and repair of said pipe line and the work on the said pipe line, and in and around said pools of oil that would and did usually ordinarily collect at and along said pipe line, was smoking a cigarette, and that he (the said foreman) struck a match and lit his cigarette, and threw the match down, and the gas was ignited from the burning match, which was known to him, or might, by the exercise of ordinary care, have been known to him, to be the effect of the striking of the match, as aforesaid.

"That plaintiff was wholly ignorant of the nature of gas or petroleum, and was also ignorant of the fact that lightning might be conducted down a wire into the oil or gas, or that it is a frequent occurrence for it to strike pools of oil and fire them, when

there is no other conductor than the air, rarified from gas arising from said pools of oil, or that it might be ignited from the dropping of a burning match within a few feet of a pool of oil; but plaintiff avers that the defendant knew of the dangers above enumerated, and knew that his work was very hazardous and dangerous, especially when the atmosphere was heavily charged with atmospheric electricity, and that in constructing its telephones, as above alleged, where the wires installed to conduct the electricity into the ground came so near the pipe and the escape of oil, and into pools of oil that would accumulate at and near said pipe, and in not warning the plaintiff of the dangers to which he was exposed in working while the lightning was flashing, and in employing for its foreman one who would strike a match and light a cigarette while standing in close proximity and within a few feet of a pool of oil in which men were working, and who was negligent and careless in and around pools of oil, known to it to be a most dangerous agency, and who was incompetent and negligent on such work as such foreman of men at such dangerous work, said defendant was guilty of gross negligence, which was the direct and proximate cause of plaintiff's injuries, and the cause of his physical and mental suffering; for plaintiff avers that, had he known of the dangers of being near a pool of oil when the lightning was flashing, or the dangers of wire as a conductor of lightning, or the quickness or ease with which oil is ignited, or the defendant had warned him of these dangers, he would have removed himself from the dangers. That the defendant knew the place he was standing in the pool of oil was dangerous and made extrahazardous by reason of the lightning, and defendant was aware of his dangers, he being ignorant thereof, which it knew, and the defendant was negligent and careless and in default in not warning him of such dangers and hazards so caused."

Appellant, by his several assignments of error, complains of the action of the court in sustaining a general demurrer to his amended petition. An analysis of the petition shows that plaintiff claimed the defendant had been negligent in four ways: (1) In placing wires or lightning arresters from telephone wires on every third or fourth pole down into the ground six or eight inches from the pipe line; (2) that defendant's foreman threw a lighted match down near the pool of oil in which plaintiff was standing; (3) in not warning plaintiff of the danger to which he was exposed in working while lightning was flashing; and (4) in employing for its foreman one who would strike a match while standing in close proximity to a pool of oil in which men were working.

The petition alleges that the oil was set on fire in three different ways: (1) That lightning came down one of the conductors (ar-resters), placed near the pipe line and pool of oil, and flashed to the gas arising from the oil, and set fire to the oil; (2) that the lightning came through the rarified air, produced by a current of gas escaping from the oil, and thus ignited the gas and oil; and (3) that the oil caught fire from a burning match carelessly thrown down near the pool of oil by the foreman, Jenkins, after he had lighted a cigarette. We will discuss, in the order named, the various grounds of negligence alleged, in so far as they are raised by propositions under appellant's general assignments.

[1, 2] First, as to placing the lightning arresters close to the pipe line, it is not alleged that there was anything wrong with the arresters, or that they had not been properly constructed, or that the ordinary effect of their construction in proximity to the pipe line would cause lightning passing from the telephone wires to the ground to flash along the pipe or on the surface of the earth; nor is there any allegation in the petition to show that a person of ordinary prudence in constructing the lightning arresters ought to have reasonably foreseen, or could have reasonably anticipated, that plaintiff, or some one similarly situated, would be injured by lightning coming down the arresters, not precisely in the way that plaintiff was injured, but injured by lightning in some way, by reason of the placing of the arresters in such proximity to the pipe line. We do not think that from the allegations of the petition, treating the allegations as true, that appellee, at the time it constructed the conductors or arresters, could have reasonably foreseen that, by reason of their proximity to the pipe line, the plaintiff, or some other person similarly situated, would be injured by lightning as plaintiff alleged he was. If placing the arresters in such proximity to the pipe line was negligence, then for such negligence to be actionable it must have been the proximate cause of the injury complained of.

In order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances; and the question of probable cause depends upon the further question whether a reasonably prudent man, in view of all the facts, would have anticipated the result—not necessarily the precise injury, but some like injury produced by the same or some similar intervening agencies. Railway v. Bigham, 90 Tex. 225, 38 S. W. 162; Seale v. Railway, 65 Tex. 274, 57 Am. Rep. 602; Light & Power Co. v. Lefevre, 93 Tex. 607, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep. 898; Railway v. Kieff, 94 Tex. 338, 60 S. W. 543; Dawson v. Metal Fireproofing Co., 94 Tex. 424, 59 S. W. 847, 61 S. W. 118; Railway v. Welch, 100 Tex. 121, 94 S. W.

333; Railway v. Barry, 98 Tex. 251, 83 S. W. 5; Neely v. Railway, 96 Tex. 274, 72 S. W. 159.

[3] Coming to the second ground of alleged negligence, that defendant's foreman, Jenkins, struck a match close to the pool of oil in which plaintiff was standing, for the purpose of lighting a cigarette, and threw the match down, and from this the oil ignited and burned plaintiff, we have concluded that this act on the part of the foreman, even if it was negligence and proximately caused plaintiff's injuries, was not an act performed by the foreman in the furtherance of his employer's business, but that in so doing he had stepped aside from his duties, and was in pursuit of his own pleasure. We think the facts alleged in this regard bring this case within that class of cases which hold that, if the servant whose alleged negligent act has caused the injury commits that act in the prosecution of an affair wholly his own, and not in the furtherance of the master's work, even if the turning aside from the master's business be only for an instant, so that it be complete, there is no liability on the part of the master for the injuries so caused. Railway v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367; Railway v. Cooper, 88 Tex. 607, 32 S. W. 517; Railway v. Henefy, 99 S. W. 884; Branch v. Railway, 92 Tex. 288, 47 S. W. 974, 71 Am. St. Rep. 844; Railway v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Railway v. Yarbrough, 39 S. W. 1096; Brandon v. Railway, 113 S. W. 968; Hidalgo v. Railway, 128 S. W. 683.

[4, 5] The third ground of negligence charged, viz., that defendant was negligent in not warning plaintiff, through its foreman, of the danger to which he was exposed in working in the pool of oil while lightning was flashing, is not presented by appellant in any proposition in his brief, and need not, therefore, be considered. We may say, however, that the master does not rest under the duty to the servant to warn him against danger which could not reasonably be foreseen. Labatt's Master and Servant, 527, 531.

[6, 7] The fourth ground of alleged negligence is that the appellant was negligent in employing for foreman one who would strike a match and light a cigarette while standing in close proximity to a pool of oil in which men were working. The petition nowhere alleged that Jenkins was habitually careless or negligent, or that his carelessness or negligence was known to defendant, or that it was of such a notorious character as that defendant would be charged with knowledge thereof, or that defendant knew that Jenkins would strike a match under the circumstances charged in the petition. The master is only required to use ordinary care in selecting his employés, and the fact that an employé is negligent on one occasion is not suffi-

cient to show that the master had not used that degree of care required by law in the selection and employment of competent servants, and a petition which merely alleges that the servant was negligent on one occasion is insufficient to show negligence of the master in the employment of such servant; and this is true even where the negligent act, producing the injury, was committed in the furtherance of the master's business. Railway v. Taylor, 35 S. W. 855; Railway v. Myers, 55 Tex. 115; Railway v. Beeman, 74 Tex. 293, 11 S. W. 1102; Railway v. Scott, 71 Tex. 711, 10 S. W. 298, 10 Am. St. Rep. 804; Campbell v. Wing, 5 Tex. Civ. App. 431, 24 S. W. 361.

[8] As to the allegation that "if plaintiff is mistaken in how said lightning was conducted into said pool of oil, then he avers that lightning seeks the place of least resistance, and the gas arising from crude petroleum oil rarifies the air and makes it produce a point of light resistance, and, if the lightning was not conducted down said wire into the pool of oil, then it came through the rarified air produced by the gas and ignited the gas and oil," etc., we think it sufficient to say that if the fire was caused in this manner, then it was set out by operation of a law of nature of which plaintiff was bound to take notice, and of the danger from which he had equal knowledge with appellant. Railway v. French, 86 Tex. 98, 23 S. W. 642; Railway v. Bradford, 66 Tex. 736, 2 S. W. 595, 59 Am. Rep. 639; Railway v. Lempe, 59 Tex. 22.

We think the court properly sustained the general demurrer, and the judgment of the court below is therefore affirmed.

Affirmed.